May it please the Court, good morning. My name is Kevin McCoy. I'm with the Federal Defender's Office in Anchorage, and I'm here to represent Mr. Zavala-Mendez. This case brings us to the intersection that exists between the entering provision and the being found provision of the unlawful entry statute. Counsel, there's something about this case struck me as funny. There are a couple of cases that you cited from other circuits, airport cases, where they say if somebody does just what they're supposed to do, they show up, they come to the facilities at the port of entry, then even though they're within the geographic limits of the United States, they're not found in the United States. What I was surprised at was there don't seem to be any precedents one way or the other for people that drive across the border on the road, as opposed to sneaking over the fence like Pachico Zapita, and go right to the customs office and present their identification. Is that right? I have not found any, Judge. I think this is a case of first impression, but I think the concept is the same. I think that a person cannot be found in the country unless they have successfully entered the country. Putting it another way, being found in the country presupposes a successful entry. Our view is a person who approaches a port of entry, regardless of where that port of entry is, whether it's in an airport or if it's at a border, if it's at the United States-Mexican border or the Alaska-Canada border, if that person approaches the point of port of entry to submit to inspection and submits to inspection and then is arrested, they've not entered the country. And our rationale for that is that the arrest has occurred at the functional equivalent of the border, and the person is not, having been arrested at the functional equivalent of the border, has been officially restrained and is not free to move about the population as the cases talk about. Does the case matter, or will all such persons just be charged with attempting to enter? I think that my own view is that this case should have been charged as an attempted reentry because that's what the, you know, who knows how a jury would respond to that, but that's where the facts are. You have a man who appears, the agent just sees him at the stop sign right in front of the inspection station, first time he notices him. There's no evidence other than the only evidence that the government presented was that he stopped at the stop sign. They were directed to appear. There was some contact between the driver and the border agent. And based on that contact, they were referred to secondary inspection. And when he was referred to secondary inspection, Mr. Zavala-Mendez truthfully identified himself, and then he was arrested. I mean, where the confusion comes from my perspective is the concept of official restraint. And that is sort of a term of art in the unlawful entry context, and it applies to situations where a person is attempting to enter the United States at a place other than a port of entry, an unguarded border, a fenced border, anything like that, or a person who engages in evasive contact at a port of entry. A person who does those things is said not to have entered the country, because the notion of being free to mix with the population unfettered is inconsistent with the notion of border officials watching you. You haven't successfully made it in. And it's our view that the continuous surveillance concept, if we could call it that, doesn't apply unless there's some effort to avoid inspection. Like I said, going across the border, a deeply wooded area, I don't think it's an opportunity. You could have gone off the road at any point along the road between the border and the station where they reported in, and you would be in the country. You would be free to mix with the people. Sure, except that as you cross the border, you encounter signs that direct you to the inspection station, that direct you to stop at the inspection station, and you're doing that. I mean, the border is either, my view is that the port of entry is the functional equivalent of a border. That's not what the cases show. Ninth Circuit cases, because it's people who come in over the Mexican border, avoid the point, the port of entry, and try to get into the United States without going through the port of entry. Correct. Your man could have done that. He could have done that, but there's no evidence of any intent to do that, or no evidence that he did that at all. And I just don't think it's the fortuitous placement of the port of entry that should define it. Otherwise, you're equating being found in with entering the country. I think all our inspection stations are probably inside the U.S., just as this one is, because the foreign countries might object to our putting an armed border station in their country. I would think so. I mean, it's a practical solution. You can't always put them right at the border for geographic reasons. And that's why I say that the inspection station in this context is the functional equivalent of a border, particularly when there are signs that direct you to do those things. You're right. There was a 20-second, 25-second period of time at 15 below where he could have wandered around. He could have gone off in the woods and gone around the inspection station. Certainly. Had he chosen to do so. Sure, sure, sure. Which is quite different from being in a in-transit area in an airport where you really don't have much opportunity to get out of that transit area without going through a border. It's no different than someone crossing a border but trying to evade the port of entry by going through, you know, one of the cases where they jump over the fences at the port of entry. It's the same sort of thing. I mean, it's still the port of entry, whether it's fenced or not. And the signs still tell you to go there. And so, I mean, it's our view that it shouldn't, you know, whether someone has successfully entered the country should not depend on the placement of the inspection station so long as the person is complying with the signs, actually submits to inspection, and either makes it in or makes it not. I mean, the risk here that I think you have is you have the risk of innocent conduct being punished. I mean, imagine, and the easiest examples are a good faith mistake example. If you could imagine that Mr. Zavala-Mendez had a good faith belief that he was entitled to come into the United States, he has to cross the border to apply. He has to come in. And so, there's, you know, if you decide that found in means crossing the border and having an opportunity, then he doesn't have a defense. And I would characterize that as innocent or innocuous conduct. Well, I guess if you've been deported and you don't know, excuse me, if you can come back in, you better find out before you cross the border. Sure, sure. But I'm, you know, you can posit a situation where a person believes that he or she has the right to come in, whether it's a good faith belief. After they've been deported? Beg your pardon? After they've been deported. You know, perhaps a person could assume that or believe that he had the permission of the Attorney General. Perhaps, you know, you could meet some charlatan on the border. And as we know that they exist, you know, we can give you the papers that you need to go in, and this will be perfectly legal. And that individual would have a good faith belief, arguably, that he or she could come into the country and apply for admission. And that's the whole point of the port of entry, you know, the inspection. Look at it. I'm sorry, sir, you can't come in. You've got to go back. And if the facts warrant an attempt charge, then the government should act on it. Well, founding doesn't require specific intent. It does not. Attempt does. It does. That's the difference. Right. So does this whole case just turn on the fact that it was impossible to have him under surveillance while the road dipped down? That while the road dipped down, he was free of official restraint? I don't know if the case turns on that, because my argument is official restraint doesn't apply to the context where you are moving towards the official point of entry, where you're invited by the signs to do that. So let's follow that. So if he went to the official port of entry, they would have said you can't come in. Mm-hmm. And then he turns around and goes back. Correct. What's the point of that? Well, I don't know what the point of it is other than they keep him out of the country or they arrest him because in their judgment, he is attempting to enter the country by subterfuge with false documents or something like that. This really isn't the extreme line of the official restraint doctrine. I think so. I mean, I just think that, you know, official restraint means many things, but in this event where you're trying to avoid a port of entry or cross the border where there's no port of entry, I just don't think, or when you're trying to get into a port of entry, I don't think it has application. That's my point. One thing that was very curious to me in this case is that one of the two men who was at the inspection station did not testify. That's correct. I don't know why. The only reason I could think of was that he was going to testify that he could see the headlights the whole time even though the car was out of sight. Certainly, that's an inference that you can draw. The government chose not to present that evidence whatever it was. You didn't subpoena him. I beg your pardon? And you did not subpoena the individual? No, I did not. Unless there are questions, I'll save my 11 seconds for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is Joanne Farrington, and I'm here today representing the views of the United States with respect to this case. It's my distinct pleasure today to present to you the views of the United States in a case that does not involve Blakely v. Washington. As we've already discussed, Mr. Zavala-Mendez is an American citizen who was stopped and arrested inside the United States at the inspection station on the Oscar Highway. Counsel, help me with something here. Yes, sir. We've got a whole line of Ninth Circuit authority along the lines of a case, I think it's called Pachico-Medina, and the line of authority basically says that if somebody sneaks across the border, they don't drive across the way they're supposed to and present themselves at the inspection station. They sneak across or under or over the fence. And while they're sneaking around in the brush, unbeknownst to them, there's electronic detection, and they haven't yet escaped the margin that we keep along the Mexican border that has electronic detection devices. Our cases hold they're not found in the United States because they haven't gotten out of the surveillance. It just strikes me as bizarre that if you drive just the way you're supposed to drive down the highway toward the inspection station, no sneaking around, prepare to present yourself at the inspection station, that then you are found in, even though the person that sneaks across the fence isn't found in. I don't get it. What sense would that make? Well, the person who sneaks across the fence, and that line of cases makes quite clear, can be found in if at any time after they are physically within the United States, they are free from the surveillance, which is the functional equivalent. You just gave me an answer that sort of evades the issue instead of responding to it. They're within that border area where there is surveillance, although they don't know it. So our cases hold that they cannot be found in the United States, right? And the reason is that they are under official restraint. But that only applies if, in fact, there was the surveillance and they were detected and being pursued. Now that theory of official restraint, I believe, is by analogy to somebody who is still at the inspection station and has not yet passed the inspection station. Isn't that correct? The theory of official restraint arose in response to a series of early cases in the last century in which the Supreme Court held that an individual who arrives at the border and is immediately turned back has not entered the United States for purposes of the due process protections and statutory protections that would otherwise apply. This court held the same concept would apply in the case of illegal entry cases and that if someone never entered the United States but was caught at the border and returned. If you come to the border station, present yourself at the border station, and then you're turned back, then you're never out of official restraint. So you can't be charged with found in. Correct? That's the case if the border station is at the border. There is not a single border station, and never will be, where you don't have to cross the border before you're within the border station. And there never will be. That's my understanding. Of course it's your understanding, because the Canadians and Mexicans don't like armed American forces within their countries. And ordinarily, when you enter, for instance, in all of the cases that I review... Well, what I'm getting at here is if it's true that at every border station the U.S. has, if you present yourself at the border station and you're turned back, you're deemed never to have left official restraint and you cannot be charged with found in, then it would seem to follow a fortiori that somebody who is approaching the border station and has not yet gotten to the border station cannot be found in the United States. After all, he'd be deeper into the United States once he had gotten to the border station. No, because the issue is not whether you've approached a border station and then turned back. The issue in every case is whether you're under official restraint from the time you are in the United States. The border station is literally a border station. It is on the border and there are gates and walls that direct you to the inspection station. You are physically within the United States. All of them have some finite amount of space between the border and any American piece of metal. There is, in fact, it is physically within the United States' property, but it is at the border. So that after crossing the border, an individual along the Mexican border where most of these cases have arisen, as they approach the inspectors, is never outside of official restraint. The situation is completely different at the Alaska Highway crossing, where for a substantial period of time after the individual crosses the border, they are completely free from any surveillance. Actually, I wonder about that. I was really struck that you didn't present one of the two eyewitnesses and the only testimony I could imagine him giving. It would be dark in January and he'd see the headlights for the five miles approaching the border station. I think the record is quite clear and unequivocal that the inspector who first saw the truck did not see it until it actually pulled up to the stop sign at the inspection station. Sure, that's the one who testified. The trial attorney made the decision that that individual was sufficient to prove his case, and I think that he did. The other inspector was not subpoenaed by the defense. Is my recollection correct? It was January? It was January. It would be dark. It was dark at that time, yes. Your idea is it's a whole lot easier to sneak off into the woods, 15 below, there between Tok and Beaver Creek than it is around the Mexican border. The issue, Your Honor, is not the physical conditions at the border that would make sneaking difficult or physically challenging. The issue is whether there was official restraint imposed by the government on the individual from the time they crossed the border. Pacheco Medina seems to be an important case here, and that's distinguishable from this case because there, Pacheco Medina wasn't approaching the port of entry. He had gone on a different path, and he was followed constantly by the Border Patrol, and he was going to be found right after he climbed the fence by the Border Patrol, and I would think for due process purposes, it might make some difference whether the person was heading toward the port of entry, which in fact Zavala Mendez was, because the facts of this show, he crossed the border, he was heading toward the port of entry. Those are these facts, whereas the facts in Pacheco Mendeza, in those cases, they were evading the port of entry. Don't you see any significance in that distinction? Actually, the courts have consistently held that for purposes of the being found in prong of the statute, that whether you enter by approaching the inspection station, or whether you enter by climbing over the fence at any point along the border, or whether you enter by walking through the woods on the Canadian-American border, which is what our typical border is with Canada, it makes no difference. Do you have a single case where any appellate court has ever affirmed a found-in conviction for somebody who was properly approaching the border station, the inspection station? There are cases in which an individual entered the United States through the inspection station, and then was later found. That's not what I asked you. No, I understand this. I'm asking you if you have a single precedent for the position that you're taking. As I've pointed out in my brief, as far as I can tell, there is no precedent for this particular factual situation. Indeed, the only two court of appeals that ever have addressed that issue, albeit in the context of international airports, have gone the other way. No, I don't think so. I think both of those cases are fully consistent with the position of the United States in this case. In both of those cases, the individuals arrived on a commercial flight, and then were arrested  They were never free to go. That exactly proves my point, because what you're arguing here is, well, he could have gone off the road, and he could have snuck around once he got off there and was headed in that direction. Well, you get off a plane at an airport. There are places you can sneak away. You can go down the stairs as soon as you get off. There are places to hide. There are things you could do if you were going to evade the port of entry. Well, the cases don't give us many facts along those lines, but certainly I think that the court can take judicial notice that when international travelers arrive at an airport, ordinarily they are detained in the sense of their being locked doors and gates until they actually pass through customs and immigration. And then they are free to go. At that point, they become free to go within the precedence of this court, and then they are within the United States. Until that point, they're not. Thank you, Counsel. Thank you, sir. Thank you, Counsel. United States v. Zavala-Mendez is submitted. Whitman v. Department of Transportation, the first of the two Whitmans, is submitted. We'll hear the next Whitman v. Department of Transportation. Please proceed.
judges: Hall, Kleinfeld, Wardlaw